S. Peter Serrano
United States Attorney
Eastern District of Washington
Jeremy J. Kelley
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

ECF No. 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | INDICTMENT 2:25-cr-00183-TOR |
| v. | Vio: 18 U.S.C. § 1349 Conspiracy to Commit Wire Fraud and Bank Fraud (Count 1) |
| SHAWN OWENS, | |
| Defendant. | 18 U.S.C. § 1343 Wire Fraud (Counts 2-5) |
| | 18 U.S.C. § 1344(1), (2) Bank Fraud (Count 6) |
| | 18 U.S.C. § 981, 18 U.S.C. § 982, 28 U.S.C. § 2461(c) Forfeiture Allegations |

The Grand Jury charges:

GENERAL ALLEGATIONS

1.   At all times relevant to this Indictment, Defendant SHAWN OWENS was a resident of Spokane County, Washington, in the Eastern District of Washington.

INDICTMENT – 1

2. At all times relevant to this Indictment, A.C. was a resident of Spokane County, Washington, in the Eastern District of Washington.

3. The Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck Protection Program (PPP).

4. In order to obtain a PPP, a qualifying business was required to submit a PPP application signed by an authorized representative of the business. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner, the applicant was required to provide the gross income amount from a 2019 or 2020 Internal Revenue Service (IRS) Form 1040, Schedule C. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the applicant was required to certify that the business was in operation as of February 15, 2020. The applicant was also required to certify that the information in the application and supporting documentation was true and correct to the best of the applicant's knowledge.

5. A business's PPP application was received and processed, in the first instance, by a participating lender. If the participating lender approved the loan, data from the application, including information about the borrower, the total amount of the PPP, the listed number of employees, and the gross income amount, was

INDICTMENT – 2

1  transmitted by the lender to the Small Business Administration (SBA), an agency of
2  the United States, in the course of processing the PPP. The location of the server
3  through which the PPP application data was submitted was based on the date the
4  application was processed by the SBA and the application number.

5      6. If a PPP application was approved, the participating lender funded the
6  PPP using its own monies. PPP funds disbursed by participating lenders were fully
7  guaranteed by the SBA. Once a PPP was funded, PPP lenders submitted
8  disbursement details to the SBA E-Tran system in Sterling, Virginia. E-Tran
9  transmitted the PPP processing fee to the lender through the SBA's Financial
10 Management System (FMS) to the Treasury.

11     7. PPPs were forgivable if the borrower met all the requirements of the
12 program. These requirements included that at least 60% of the PPP funds were used
13 for payroll, while the remaining 40% could be used for payroll, mortgage interest,
14 rent, and utilities. The funds were not to be used for personal expenses. In seeking
15 forgiveness, the borrower was required to certify that they used the funds as required.
16 PPP forgiveness applications were received through a cloud-based platform
17 (Summit) through the Amazon Web Services Government (AWS GOV) cloud server
18 in Oregon. SBA transmitted the forgiveness payments to the PPP lender through the
19 FMS servers in Sterling, Virginia.

20     8. In addition to the PPP, the CARES Act also authorized COVID-19
21 related funding for the Economic Injury Disaster Loan (EIDL) program. EIDL is an
22 SBA program that provides low-interest funding to small businesses, renters, and
23 homeowners affected by declared disasters. The EIDL program also offered
24 Targeted EIDL Advance and Supplemental Targeted Advance grants for certain
25 qualifying businesses that did not have to be repaid.

26     9. In order to obtain an EIDL and advance, a qualifying business was
27 required to submit an application to the SBA and provide information about its
28 operations, such as the number of employees, gross revenues for the 12-month

INDICTMENT – 3

period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

10. The amount of an EIDL, if the application was approved, was determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as set forth above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, employee sick leave, production costs, and business obligations and expenses, such as business debts, office rent, and office mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

11. EIDL applications were received in cloud-based platforms. The location of the server through which the EIDL application was submitted was based on the date the application was processed by SBA and the application number. EIDL Targeted Advance and Supplemental Advance applications were submitted through Rapid Finance systems that utilizes Microsoft cloud-based servers located in Des Moines, Iowa. EDIL disbursements were initiated by the SBA Denver Finance Center located in Denver, Colorado, which transmitted the payment information through the FMS system, with servers in Sterling, Virginia, to the Department of Treasury.

### The Scheme and Conspiracy and its Manner and Means

12. The allegations in paragraphs 1 through 11 of this Indictment are incorporated as though realleged herein.

13. Beginning no later than in or about March 2021 and continuing through at least February 2022, in the Eastern District of Washington and elsewhere, Defendant SHAWN OWENS and A.C., and others, both known and unknown to the

INDICTMENT – 4

Grand Jury, devised and intended to devise a scheme to defraud the SBA and participating federally-insured PPP lenders and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

14. Specifically, as part of the scheme and conspiracy, Defendant SHAWN OWENS and A.C. submitted and caused to be submitted false information to the SBA and participating PPP lenders about false and fictitious companies in an attempt to obtain CARES Act funds to which Defendant SHAWN OWENS was not entitled. As part of the scheme and conspiracy, Defendant SHAWN OWENS and A.C. also created and caused to be created false and fraudulent IRS Form 1040 Schedule C documents purporting to show profit and loss for businesses, which were submitted in support of the fraudulent PPP applications.

It was further part of this scheme and conspiracy that:

### Payroll Protection Program Loan No. 1268628702

15. On or about March 30, 2021, Defendant SHAWN OWENS and A.C. submitted and caused to be submitted a PPP application to STCU, a financial institution headquartered in Washington State. The application listed the business legal name of SO Roadside LLC, the total gross income of $134,615, the number of employees as one (1), and the date of establishment as October 15, 2018. In the application Defendant SHAWN OWENS and A.C. requested and caused to be requested a PPP loan of $20,833.

16. In support of the application Defendant SHAWN OWENS and A.C. submitted and caused to be submitted a false and fictitious IRS Form 1040 Schedule C listing gross receipts of $134,615, total expenses of $35,475, and a net profit of $99,140.

17. In the PPP application, Defendant SHAWN OWENS and A.C. certified and caused to be certified that the information provided in the application and supporting documents was true and accurate in all material respects. However, the representations and certifications made in the PPP application and supporting

INDICTMENT – 5

Schedule C were materially false and fraudulent.

18. Based upon the false and fraudulent information submitted and caused to be submitted by Defendant SHAWN OWENS and A.C., STCU approved the application, which was then approved by the SBA via the use of interstate wires and assigned PPP No. 1268628702. On or about April 6, 2021, STCU disbursed $20,833.00 to Defendant SHAWN OWEN's STCU account ending in -6608.

19. On or about February 16, 2022, Defendant SHAWN OWENS and A.C. submitted and caused to be submitted a PPP Loan Forgiveness Application for PPP No. 1268628702 in the name of SO Roadside LLC. The Application listed one (1) employee both at the time of the application and time of forgiveness and stated that $13,500 of the PPP had been spent on payroll. Based upon the false and fraudulent information submitted and caused to be submitted by Defendant SHAWN OWENS and A.C., on or about February 24, 2022, the SBA granted the Forgiveness application PPP No. 1268628702 and transmitted a forgiveness payment to STCU via interstate wires in the amount of $21,023.64 ($20,833 in principal and interest of $190.64).

### Economic Injury Disaster Loan Application No. 3320995846

20. On or about June 15, 2021, Defendant SHAWN OWENS and A.C. created and caused to be created an application for an EIDL, Application No. 3320995846. The application falsely represented that Defendant SHAWN OWENS operated a sole-proprietorship business in Spokane, Washington, doing business as SO Roadside LLC. The application falsely represented that the company was engaged in transportation, had two (2) employees, was opened on October 15, 2018, had 2019 gross revenues of $99,140, and had 2019 cost of goods sold of $35,475. Defendant SHAWN OWENS and A.C. falsely certified and caused to be falsely certified that the information provided in the application was true and correct. On or about June 24, 2021, the SBA declined to fund the EIDL.

INDICTMENT – 6

21. On or about November 30, 2021, Defendant SHAWN OWENS and A.C. created and caused to be created an application for both a Targeted Advance and Supplemental Advance for EIDL Application No. 3320995846. The Targeted Advance and Supplemental Advance application falsely represented that Defendant SHAWN OWENS' company had ten (10) employees. Defendant SHAWN OWENS and A.C. falsely certified and caused to be falsely certified that the information provided in the Targeted Advance and Supplemental Advance application was true and correct. The SBA declined to fund the Targeted Advance and Supplemental Advance.

## COUNT 1

(Conspiracy to Commit Wire Fraud and Bank Fraud)

22. The allegations in paragraph 1 through 21 of this Indictment are incorporated as though realleged herein. Furthermore, the allegations in each other Count of this Indictment are hereby incorporated in this Count.

23. Beginning no later than in or about March 2021 and continuing until at least February 2022, in the Eastern District of Washington, and elsewhere, Defendant SHAWN OWENS, A.C., and others known and unknown to the Grand Jury, knowingly and willfully combined, conspired, and agreed to commit the following offenses:

   a. To devise and participate in a scheme or plan to defraud or obtain money or property by materially false or fraudulent pretenses, representations, or promises, and thereby use or cause to be used an interstate wire, in violation of 18 U.S.C. § 1343; and

   b. To knowingly execute or attempt to execute a scheme to defraud a federally-insured financial institution and obtain money in its custody and control, in violation of 18 U.S.C. § 1344(1) and (2).

All in violation of 18 U.S.C. § 1349.

INDICTMENT – 7

## COUNTS 2–5

(Wire Fraud)

24. The allegations in paragraph 1 through 21 of this Indictment are incorporated as though realleged herein. Furthermore, the allegations in each other Count of this Indictment are hereby incorporated in this Count.

25. On or about each of the dates set forth below, in the Eastern District of Washington and elsewhere, Defendant SHAWN OWENS, for the purpose of executing the scheme described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
| --- | --- | --- |
| 2 | June 15, 2021 | EIDL Application No. 3320995846 transmitted to the SBA |
| 3 | November 30, 2021 | Application for Targeted Advance and Supplemental Advance for EIDL Application No. 3320995846 transmitted to the SBA |
| 4 | February 16, 2022 | PPP Loan Forgiveness Application transmitted to SBA for PPP No. 1268628702 |
| 5 | February 24, 2022 | $21,023.64 Forgiveness Payment transmitted from SBA to STCU |

All in violation of 18 U.S.C. § 1343.

## COUNT 6

(Bank Fraud)

26. The allegations in paragraphs 1 through 21 of this Indictment are incorporated as though realleged herein. Furthermore, the allegations in each other Count of this Indictment are hereby incorporated in this Count.

27. On or about March 30, 2021, Defendant SHAWN OWENS, in the Eastern District of Washington and elsewhere, did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, as defined by 18 U.S.C. § 20,

INDICTMENT – 8

which scheme and artifice employed material falsehoods, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain moneys, funds, credits, assets, or other property owned by, and under the custody and control of one or more said financial institutions by means of false and fraudulent pretenses, representations, and promises, to wit, a PPP Application submitted to STCU in the name of the business SO Roadside LLC, all in violation of 18 U.S.C. § 1344(1) and (2).

## NOTICE OF FORFEITURE ALLEGATIONS

The allegations set forth in this Indictment are hereby realleged and incorporated herein by this reference for the purpose of alleging forfeitures.

<u>Wire Fraud</u>

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of an offense(s) in violation of 18 U.S.C. § 1343, Wire Fraud, as set forth in this Indictment, the Defendant, SHAWN OWENS, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

<u>MONEY JUDGMENT</u>

A sum of money in United States currency representing the amount of proceeds obtained by the Defendant from the wire fraud violations.

<u>Bank Fraud</u>

Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of an offense(s) in violation of 18 U.S.C. § 1344, Bank Fraud, as set forth in this Indictment, the Defendant, SHAWN OWENS, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s). The property to be forfeited includes, but is not limited to:

INDICTMENT – 9

MONEY JUDGMENT

A sum of money in United States currency representing the amount of proceeds obtained by the Defendant from the bank fraud violations.

If any of the property described above, as the result of any act or omission of the Defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (Wire Fraud); and/or 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c) (Bank Fraud).

DATED this 20 day of November 2025.

_____
S. Peter Serrano
United States Attorney

_____
Jeremy J. Kelley
Assistant United States Attorney

INDICTMENT – 10